UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THOMAS M. JAMES | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:13-cv-541-WTL-TAB |
| v. | ) | |
| | ) | |
| GEO GROUP, INC., | ) | |
| SUPERINTENDENT, JEFFREY | ) | |
| WRINGLES, CMS-MEDICAL | ) | |
| DEPARTMENT, DOCTOR ELI | ) | |
| LORENZO, MR. LEFLORE, | ) | |
| WISHARD HOSPITAL and | ) | |
| DOCTOR NICOLAS P. VILLANUSTRE | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT DOCTOR NICOLAS P. VILLANUSTRE'S
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT**

*COMES NOW*, Defendant Dr. Nicolas P. Villanustre ("Defendant" or "Dr. Villanustre"), by counsel, and hereby submits this Brief in Support of Motion for Summary Judgment on the claims submitted by Plaintiff, Thomas M. James ("Plaintiff" or "James").

### I. Statement of Material Facts Not in Dispute

On January 2, 2008, James visited the Emergency Room at Wishard Memorial Hospital for left jaw pain. *See* Exhibit A. James was seen by Dr. Hal J. Minnigan. *Id*. James was diagnosed with a jaw fracture (comminuted left mandibular subcondylar fracture with anterior dislocation and displacement of the condyle). *See* Exhibit A-1. James was prescribed hydrocodone, acetaminophen and chlorhexidine oral rinse. *See* Exhibit A-2. James was referred for a plastic surgery consult appointment for Monday, January 7, 2008 for follow-up of the jaw fracture. *Id.*

1

On January 7, 2008, James saw Dr. Villanustre for an initial surgery evaluation.[1] *See* Exhibit B. James was examined by Dr. Villanustre. *Id.* Dr. Villanustre noted, among other things, that James had minimal swelling on the left angle of the jaw and complained of pain in the area. *Id.* Dr. Villanustre noted, "considering the length of time since the injury and the good function of the jaw and the normal occlusion, we decided at this point for two (2) weeks of soft diet and follow-up in our clinic with a panorex in two (2) weeks." *Id.*

Dr. A. Cohens reviewed James' CT scans. *See* Exhibit B-1. Dr. A. Cohens noted, among other things, Plaintiff's diagnosis of a left condyle fracture, anteriorly displaced. *Id.* Dr. A. Cohen also noted good function and a soft diet. Finally, Dr. A. Cohens stated that "I don't feel surgery will improve this." *Id.* All records relied upon are certified. *See* Exhibit C. Such certification is relied upon and incorporated herein.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322, (1986). More importantly, Rule 56(c) does not require that the moving party negate its opponent's claim. *Id.* at 323, 325; *Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995). Rather, the moving party "may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the non-moving party to produce any evidence which would create a genuine dispute for the jury." *Cox*, 53 F.3d at 149. The nonmoving party on the other hand, may not rely on the pleadings or conclusory allegations, but instead must present specific,

---

[1] The record incorrectly states 2007, but this is corrected on the second page of the record which shows the date of 2008.

probative evidence that establishes a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 252 (1986).

A "genuine" issue does not exist unless sufficient record evidence would permit a reasonable jury – that is a jury that will base its decision on the facts and the law, rather than on sympathy or antipathy or private notions of justice – to return a verdict for the non-movant on the evidence presented. *Anderson,* 477 U.S. at 247-48; *Karazanos v. Navistar Int'l Trans. Corp.*, 948 F.2d 332, 338 (7th Cir. 1991). A scintilla of evidence in support of a non-movant's position or evidence that is "merely colorable" does not preclude summary judgment; rather, there must be "significantly probative" evidence. *Anderson*, 477 U.S. at 249, 252. Moreover, the non-moving party must show that the disputed facts are "material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. In other words, a court may grant summary judgment "not only when the material facts are undisputed, but also when the non-movant's evidentiary offering is simply too thin to warrant the case going to trial." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 285 (N.D. Ill. 1988).

## II. Argument - Plaintiff has Failed to Establish Liability for Deliberate Indifference under the 8th Amendment.

To establish liability for deliberate indifference, a prisoner must meet both an objective and subjective component. *Williams v. Berry,* 2013 U.S. Dist. LEXIS 170616 (N.D. Ind. Nov. 27, 2013). The prisoner must show the following: (1) He had an objectively serious medical need; and (2) The defendants' act was deliberate indifference to that medical need. […] *Id.*

The Court further explains:

A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley* 414 F.3d 645, 653 (7th Cir. 2005).

On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to his medical needs. Deliberate indifference is something approaching a total unconcern for a prisoner's welfare in the face of serious risks, or a conscious culpable refusal to prevent harm.[…] When an inmate has received some form of treatment for a medical condition, to establish deliberate indifference he must show that the treatment was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition. Furthermore, inmates are not entitled to demand specific medical treatment, nor are they entitled to the best care possible. *Id.*

Federal courts have held that "the subjective standard requires more than negligence and that it approaches intentional wrong doing." *Glasco v. McKinney,* 2013 US Dist. LEXIS 145254 (S.D. Ind. Oct. 8, 2013). For a medical professional to be held liable under the deliberate indifference standard, he must make a decision that is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base a decision on such a judgment." *Jackson v. Kotter,* 541 S.3d 688, 697 (7th Cir. 2008), *Quarles v. Sevier,* 2013 U.S. Dist. LEXIS 158190 (N.D. Ind. Nov. 5, 2013).

Finally, the United States Supreme Court has stated that "conduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e. the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 SCT 1970 128 L. Ed 2d 811 (1994).

In the present case, Dr. Villanustre does not dispute that a fractured jaw is arguably considered a "serious" medical need; however, there is no evidence to support James' claim that

4

Dr. Villanustre was deliberately indifferent to James' medical need. In fact, the medical evidence shows the opposite. James first visited the Emergency Room at Wishard Hospital on January 2, 2008. *See* Exhibit A. He was seen by a Dr. Minnigan who diagnosed him with a jaw facture. *See* Exhibit A-1. James received treatment. *See* Exhibit A-2. He returned to the Wishard Hospital Emergency Room on January 7, 2008 with complaints of pain and problems chewing and he was seen by Dr. Villanustre. *See* Exhibit B. Dr. Villanustre examined James and noted that he had "wide opening four fingerbreadth's mouth opening with slight deviation of the chin towards the left. He had normal occlusion with no intraoral wounds. He has minimal swelling on the left angle of the jaw." *Id*. Dr. Villanustre further noted, "considering the length of time since the injury and the good function of the jaw and the normal occlusion, we decided at this point for two (2) weeks of soft diet and follow up in our clinic with a Panorex in two (2) weeks" *Id.* Dr. A. Cohens also reviewed James CT scan and agreed, noting, among other things, "good function. Soft diet. I don't feel surgery will improve this." *See* Exhibit B-1.

The actions by Dr. Villunastre simply do not support a claim for deliberate indifference. One could hardly argue from these facts that Dr. Villanustre demonstrated "total unconcern" or "intentional mistreatment" towards James. Neither do the facts demonstrate that Dr. Villanustre's action was "so blatantly inappropriate as to evidence intentional mistreatment" or that he acted in an "intentionally or criminally reckless manner." James claims that Dr. Villanustre and Wishard Hospital should have provided "emergency medical surgery." (Complaint, Doc. No. 2, Page ID 16). However, as the court makes clear in *Berry* inmates cannot demand a "specific treatment" nor are inmates "entitled to the best care possible." James' allegation that he needed emergency medical surgery is nothing more than a negligence claim. In terms of making a claim for deliberate indifference, "negligence does not meet this standard;

5

therefore, even admitted medical malpractice does not give rise to a constitutional violation." *Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006). Dr. Villanustre conducted a physical examination of James and made a medical judgment based on that examination. Dr. A. Cohens agreed with that course of action. There is no evidence to suggest that this treatment was a "substantial departure from accepted professional judgment." There is simply no evidence here from which a jury could reasonably conclude that Dr. Villanustre was deliberately indifferent towards James.

## IV. Conclusion

James has failed to establish a case for deliberate indifference. James has not alleged any facts approaching deliberate indifference.

**WHEREFORE,** Defendant Doctor Nicolas P. Villanustre respectfully asks the Court to grant Summary Judgment and for all other proper relief in the premises.

Respectfully submitted,

/s/Gerald B. Coleman
Gerald B. Coleman, #16009-49
Coleman Stevenson, LLP
9101 Wesleyan Road, Suite 100
Indianapolis, Indiana 46268
Telephone: (317) 875-0400
Facsimile: (317) 802-0900
Email: gcoleman@csmlegal.com

*Attorney for Defendant Doctor*
*Nicolas P. Villanustre*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant Doctor Nicolas P. Villanustre's Brief in Support of Motion for Summary Judgment has been filed electronically by operation of the Court's electronic filing system as well as served upon the following by First Class, U.S. Mail, postage pre-paid, this 28th day of January, 2014.

Thomas M. James #98106
Arizona State Prison
ASPC-Douglas
Moshaue North
Post Office Box 5002
Douglas, Arizona 85608

Respectfully submitted,

/s/Gerald B. Coleman
Gerald B. Coleman, #16009-49
Coleman Stevenson, LLP
9101 Wesleyan Road, Suite 100
Indianapolis, Indiana 46268
Telephone: (317) 875-0400
Facsimile: (317) 802-0900
Email: gcoleman@csmlegal.com

*Attorney for Defendant Doctor
Nicolas P. Villanustre*