UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS M. JAMES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No.: 1:13-cv-00541-WTL-TAB ) |
| LORENZO ELI, M.D., and NICHOLAS P. VILLANUSTRE, M.D. | ) ) ) ) |
| Defendants. | ) |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Defendant, Lorenzo Eli, M.D. ("Dr. Eli"), by counsel and for his Memorandum in Support of his Motion for Summary Judgment states:

**Issues to Be Decided**

1. Whether Dr. Eli was deliberately indifferent to Thomas James' ("Mr. James") infected toenail when Dr. Eli obtained cultures, prescribed antibiotics and pain medication, issued a lay-in pass for Mr. James, scheduled him for follow-up and referred him to the foot doctor?

2. Whether Dr. Eli was deliberately indifferent to Mr. James' jaw injury when Dr. Eli immediately transferred Mr. James to Wishard Hospital after Dr. Eli's initial assessment, followed Wishard's recommendation for a plastic surgery consultation, prescribed pain medications and a soft diet, and ordered follow-up x-rays of Mr. James' jaw?

### INTRODUCTION

At all times relevant to his Complaint, Mr. James was incarcerated at the New Castle Correctional Facility ("New Castle"). Mr. James is currently incarcerated within the Arizona

Department of Corrections. He filed this action against Dr. Eli alleging deliberate indifference pursuant to 42 U.S.C. § 1983 due to the alleged violation of his 8th and 14th Amendment rights. Specifically, Plaintiff alleges that Dr. Eli was deliberately indifferent to issues involving an infected toenail and broken jaw.

Summary judgment for Dr. Eli is proper because the record before this Court does not support Mr. James' claims that Dr. Eli was deliberately indifferent to his medical needs. Mr. James cannot meet his burden to establish that Dr. Eli knowingly disregarded a risk to Mr. James' overall health and welfare. Rather, the evidence is to the contrary and demonstrates that Dr. Eli took reasonable actions in response to Mr. James' medical issues by ordering cultures, prescribing antibiotics, and referring Mr. James to the foot doctor for his infected toenail, and by referring Mr. James to Wishard Hospital for evaluation and care of his broken jaw. In addition, Wishard surgeons confirmed that Mr. James did not require surgery for his jaw.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Dr. Eli was one of several physicians at the New Castle Correctional Facility at times relevant to Plaintiff's Complaint. *See Affidavit of Dr. Eli, para. 3, attached to Designation of Evidence as Exhibit A*. If in inmate wanted to be seen by medical on a non-emergent basis, he would have to submit a Health Care Request. *Id. at para. 4*. Nursing staff would then gather and triage the requests to determine who should be seen by nursing and who should be scheduled to see the doctor. *Id*. Dr. Eli would see inmates as they were placed on his schedule by nursing staff. *Id*. He did not set or arrange the patient schedule. *Id*.

### Infected Toenail

Mr. James arrived at New Castle from Arizona on or about April 3, 2007. *Id. at para. 6*. On October 23, 2007, Dr. Eli first saw Mr. James for complaints of an ingrown toenail. *Id. at*

2

*para. 7; Medical Records of Thomas James, attached to Designation of Evidence as Ex. B, p. 1.* Dr. Eli's exam revealed an infected left great toenail. *Id.* In response, Dr. Eli ordered a culture and sensitivity test, Bactrim DS (antibiotic) twice a day for fifteen days, bacitracin ointment and daily dressing changes, Tylenol, a lay-in pass for ten days (which allowed Mr. James to receive meals in his cell), scheduled him to follow-up in two weeks, and referred him to the facility foot doctor. *Id.* On October 30, 2007, Mr. James returned to medical. *Id. at para. 8; Ex. B., p. 2.* Dr. Eli informed Mr. James that he needed to give the antibiotics a chance to work. *Id.* Dr. Eli also instructed the nurse to provide Mr. James with a protocol box of Ibuprofen, to take one pill three times per day, due to his complaints of pain. *Id.*

On November 6, 2007, Dr. Eli saw Mr. James for his two week follow up. *Id. at para. 9; Ex. B., p. 3.* At that time, Mr. James' left great toenail looked much better. *Id.* Dr. Eli continued his Bactrim prescription for ten days, ordered Naprosyn for pain relief for ten days, and extended his lay-in pass for an additional seven days. *Id.* Dr. Eli had no further involvement in Mr. James' care for his toenail. *Id. at para. 10.*

On November 20, 2007, Mr. James underwent a toenail removal procedure at the facility from another physician and received instructions on how to care for his foot post-operatively. *Id. at para. 11; Ex. B., p. 4.* Mr. James was also provided crutches and prescribed pain medication and antibiotics following the procedure. *Id.*; *Ex. B., pp. 5-6.*

Dr. Eli's care for Mr. James' ingrown toenail included obtaining cultures, prescribing antibiotics and pain medication, issuing a lay-in pass, scheduling him for follow-up and referring him to the foot doctor. *Id. at para. 23.* These actions were appropriate for Mr. James' condition, complied with the standard care, and were far from deliberately indifferent to his medical needs. *Id.*

**Broken Jaw**

On December 29, 2007, Mr. James was seen by another physician at New Castle due to his complaints of jaw pain. *Id. at para. 12; Ex. B., p. 7*. The physician ordered x-rays of Mr. James' mandible (jawbone), prescribed Ibuprofen for pain management, and requested that Mr. James be placed on the list for MD sick call. *Id*.

Dr. Eli first saw Mr. James for his jaw issues on January 2, 2008. *Id. at para. 13; Ex. B., p. 7*. A review of Mr. James' x-rays confirmed a fractured left mandible. *Id*. In response, Dr. Eli promptly ordered Mr. James transferred to Wishard Hospital for further evaluation and provided him Vicodin for pain management. *Id*. On January 2, 2008, Mr. James was transferred to Wishard Hospital for further evaluation of his jaw. *Id. at para. 14; Ex. B., pp. 8-12*. Mr. James reported to Wishard Hospital physicians that he hurt his jaw three weeks ago when he fell on the stairs, that it had gotten better, and then he heard a "pop" about one week ago and was experiencing more pain. *Id*. Wishard physicians performed a maxillofacial CT scan which confirmed a fractured mandible. *Id*. Wishard physicians recommended that Mr. James follow-up with a plastic surgeon at Wishard Hospital the following Monday (January 7, 2008). *Id*.

Dr. Eli next saw Mr. James on the morning of January 3, 2008. *Id. at para. 15; Ex. B., pp. 13-14*. Per Wishard Hospital's recommendations, Dr. Eli ordered a soft diet for Mr. James, Vicodin for pain management, Peredox oral rinse, and requested a consultation for Mr. James to return to Wishard Hospital plastic surgery. *Id*. Dr. Eli also placed Mr. James in the New Castle infirmary for closer observation and care. *Id*. On January 7, 2008, Mr. James presented to Wishard Hospital plastic surgery for a consultation. *Id. at para. 16; Ex. B., p. 15*. The Wishard Hospital surgeon noted good function of Mr. James' jaw and that surgery was not indicated. *Id*.

Upon Mr. James' return to New Castle, he continued to receive a soft diet, Peredox rinse, and pain medications including at times Vicodin, Naproxen and Tylenol. *Id. at para. 17; Ex. B., pp. 16-21*. On February 13, 2008, Dr. Eli ordered a follow-up consultation for Mr. James with the Wishard Hospital plastic surgery clinic. *Id. at para. 18; Ex. B., p. 22*. On February 26, 2008, Dr. Eli evaluated Mr. James due to complaints of left-sided facial pain. *Id. at para. 19; Ex. B., p. 23*. Dr. Eli prescribed Naproxen 500 mg and ordered a repeat x-ray, which was completed the following day. *Id*.

Dr. Eli last saw Mr. James on March 6, 2008 for a chronic care clinic appointment. *Id. at para. 20; Ex. B., p. 24*. Dr. Eli ordered labs and a Panorex view x-ray of Mr. James' left jaw to monitor the healing process of his fracture. *Id*. Mr. James transferred out of New Castle and out of Dr. Eli's care and back to Arizona on or about April 15, 2008. *Id. at para. 21*. Dr. Eli was not responsible for the transfer of inmates from Arizona to New Castle, or for their return to Arizona. *Id. at para. 22*.

Dr. Eli's care for Mr. James' fractured jaw included transferring him to Wishard Hospital on the same day as Dr. Eli's initial assessment, following Wishard's recommendation for a plastic surgery consultation, prescribing pain medications, a soft diet, and ordering follow-up x-rays of Mr. James' jaw. *Id. at para. 24*. These actions were appropriate for Mr. James' condition, complied with the standard care, and were far from deliberately indifferent to his medical needs. *Id*.

Throughout Dr. Eli's course of care of Mr. James, Dr. Eli used his medical judgment and thoughtfully monitored Mr. James' conditions through physical examinations, follow-ups, and referrals to specialists when warranted, which was the appropriate course of action and within

5

the standard of care for both his infected toenail and broken jaw. *Id. at para. 25*. Dr. Eli never ignored Mr. James' condition and was not deliberately indifferent to his medical needs. *Id*.

## STANDARD OF REVIEW

### A. Summary Judgment Standard

The party seeking summary judgment must demonstrate that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure; *Certain Underwriters of Lloyd's v. General Accident Insurance Company of America*, 909 F.2d 228 (7th Cir. 1990). Once the movant makes such a showing, the opponent must produce evidence to show that material facts are actually in dispute. *Lujan v. National Wildlife Federation*, 110 S. Ct. 31777 (1990); *Celotex Corporation v. Catrett*, 477 U.S. 37 (1986); *Sims v. Mulcahy*, 902 F.2d 524 (7th Cir.), cert. denied 111 S. Ct. 249 (1990). If the party opposing the motion fails to do so, summary judgment is appropriate. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254 (7th Cir.), cert. denied, 474 U.S. 829 (1990). Since the decision in *Celotex Corporation*, the party bearing the burden of proof on an issue must produce evidence sufficient to establish the existence of every element essential to the party's cause. 477 U.S. at 322-23.

To defeat a motion for summary judgment, the opposing party must establish that sufficient evidence exists for a jury to return a verdict for him. *Harbor House Condominium Association v. Massachusetts Bay Insurance Company*, 915 F.2d 31 (7th Cir. 1990); *Hines v. British Steel Corporation*, 907 F.2d 726 (7th Cir. 1990). The opposing party cannot rest on mere allegations in the pleadings, but must designate disputed facts that are material, or outcome-determinative, under applicable law. *Hughes v. Joliet Correctional Center*, 931 F.2d 425 (7th

Cir. 1991); *Johnson v. Pelker*, 891 F.2d 136 (7th Cir. 1989). In this case, no material issues of fact exist which would preclude summary judgment.

**B. Deliberate Indifference Standard**

Plaintiff alleges that Dr. Eli was deliberately indifferent to his infected toenail and broken jaw. To meet the deliberate indifference standard, Plaintiff must show that he had a serious medical condition that mandated treatment and that Dr. Eli acted with a culpable state of mind. *Farmer v. Brennan*, 114 S. Ct. 1970, 1981 (1994); *Steading v. Thompson*, 941 F.2d 498, 500 (7th Cir. 1991), *cert. denied*, 112 S. Ct. 1206 (1992). Prison officials are only liable under the Eighth Amendment if they have knowledge of and disregard an excessive risk to an inmate's health or safety; showing a culpable mental state is essential to establishing this. *Farmer v. Brennan*, 114 S. Ct. at 1979.

Deliberate indifference means recklessness in a criminal subjective sense, such as disregarding a risk of danger so great that knowledge of the danger can be inferred. *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992). Negligence or even gross negligence cannot establish a Constitutional violation. *Goka v. Bobbit*, 862 F.2d 646, 650 (7th Cir. 1988). Subjective intent may be established by showing that the defendant had actual knowledge of impending harm that was easily preventable, such that conscious refusal to prevent the harm can be inferred from the defendant's failure to prevent it or showing that a defendant deliberately avoided acquiring knowledge of impending harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Patrick v. Staples*, 780 F. Supp. 1528 (N.D. Ind. 1991).

The Supreme Court has interpreted the Eighth Amendment's proscription against cruel and unusual punishment as imposing a duty upon the States, through the Fourteenth amendment, to provide adequate medical care to incarcerated individuals. *Boyce v. Moore*, 314 F.3d 884,

888-889, (7th Cir. 2002), citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)); s*ee also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

## ARGUMENT

Plaintiff has failed to support his claims that Dr. Eli was deliberately indifferent in the medical care provided for his infected toenail and broken jaw. Rather, the evidence confirms that Dr. Eli provided Plaintiff with appropriate care, including antibiotics, pain medication, and referrals to outside specialists, which was far from deliberately indifferent to his medical needs.

**A. Plaintiff has failed to establish that Dr. Eli was deliberately indifferent to his infected toenail when Dr. Eli obtained cultures, prescribed antibiotics and pain medication, issued a lay-in pass, scheduled him for follow-up, and referred him to the foot doctor.**

Dr. Eli promptly evaluated Plaintiff for his ingrown toenail. According to Plaintiff's Civil Rights Complaint, he first requested medical care for a "bleeding, ingrown toenail" on October 23, 2007. *Plaintiff's Second Amended Civil Rights Complaint, p. 4-A, attached to Designation of Evidence as Exhibit C*. Dr. Eli saw Plaintiff on that same date. At that time, Dr. Eli ordered a culture and sensitivity test, prescribed antibiotics, a topical ointment and daily dressing changes, pain medication, a lay-in pass so Plaintiff would not have to walk on his foot to go to chow, referred him to the facility foot doctor, and scheduled Plaintiff for a follow-up in two weeks. These actions by Dr. Eli were timely and appropriate in response to Plaintiff's complaint of an infected toenail.

Plaintiff returned to the medical department the following week. Dr. Eli informed Plaintiff that he needed to continue to give the antibiotics a chance to work. In response to Plaintiff's complaints of pain, Dr. Eli prescribed him Ibuprofen.

When Plaintiff returned for his two-week follow up with Dr. Eli on November 6, 2007, his left toenail was looking better. Despite this, Dr. Eli continued Plaintiff's antibiotic prescription, ordered additional pain medication, and extended Plaintiff's lay-in pass for an additional seven days. Dr. Eli had no further involvement in Plaintiff's care for his toenail.

These are not the actions of a physician who disregarded the needs of his patient. Instead, these are the actions of a physician who thoughtfully considered the appropriate course of action suitable for Plaintiff's needs. The fact that Plaintiff is displeased with Dr. Eli's medical decisions does not establish deliberate indifference. Nor can Plaintiff demand specific care as inmates are not entitled to demand specific treatment or even "to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [an inmate] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). Moreover, "[m]ere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *See also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir.1996).

There is no evidence to suggest that Dr. Eli's decided course of action for Plaintiff's infected toenail was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Instead, the evidence confirms that Dr. Eli used his medical judgment in determining the proper course of care for Plaintiff, and that it was reasonable, appropriate, and

9

complied with the standard of care. Therefore, Dr. Eli was not deliberately indifferent to Plaintiff's medical needs for his infected toenail.

> **B. Plaintiff has failed to establish that Dr. Eli was deliberately indifferent to his broken jaw when Dr. Eli immediately transferred Plaintiff to Wishard Hospital after Dr. Eli's initial assessment, followed Wishard's recommendation for a plastic surgery consultation, prescribed pain medications and a soft diet, and ordered follow-up x-rays of Plaintiff's jaw.**

Plaintiff was placed on Dr. Eli's patient schedule for his injured jaw for the first time on January 2, 2008. Prior to this assessment, Plaintiff had been evaluated by another physician at the facility on December 29, 2007, who ordered x-rays of Plaintiff's jaw due to his complaints of pain. During Dr. Eli's first assessment of Plaintiff on January 2, 2008, Dr. Eli reviewed Plaintiff's x-rays, which confirmed a fractured left mandible. In response, Dr. Eli sent Plaintiff to Wishard Hospital ER *that same day* for further evaluation and care.

Dr. Eli saw Plaintiff for follow-up the morning after he returned from Wishard Hospital. At that time, Dr. Eli implemented Wishard's suggestions of a soft diet, Vicodin for pain management, Perdox oral rinse, and requested a consultation for Plaintiff to return to Wishard Hospital plastic surgery. In addition to implementing Wishard's recommendations, Dr. Eli placed Plaintiff in the New Castle infirmary for closer observation and care.

As suggested by Wishard Hospital, Dr. Eli sent Plaintiff to Wishard Hospital plastic surgery on January 7, 2008. The Wishard plastic surgeon noted good function of Plaintiff's jaw and did not recommend surgery. Upon Plaintiff's return to New Castle, Dr. Eli continued Plaintiff's soft diet, oral rinse and pain medications. Dr. Eli also ordered additional x-rays to monitor the healing process of Plaintiff's fracture and a follow-up with Wishard Hospital plastic surgery. However, before a follow-up appointment could be arranged with Wishard Hospital, Plaintiff transferred out of New Castle and back to Arizona in April of 2008.

Dr. Eli's involvement in caring for Plaintiff's broken jaw consisted of sending him to the hospital on the same day as Dr. Eli's initial evaluation, following Wishard Hospital's recommendations for Plaintiff (which included pain medications, a soft diet, and an appointment with Wishard plastic surgery), and ordering follow-up exams. Again, these are not the actions of a physician who ignored the needs of his patient. In fact, these actions are to the contrary. Dr. Eli quickly responded to Plaintiff's needs by transferring him to the hospital on the same day as his initial evaluation. Additionally, Dr. Eli was able to get Plaintiff seen by Wishard plastic surgery on day recommended by the Wishard ER physicians, where the surgeon did not recommend surgery. Therefore, Dr. Eli did not "delay" any treatment for Plaintiff. Dr. Eli used his medical judgment in caring for Plaintiff and provided him with reasonable and appropriate treatment that complied with the standard of care. Again, Plaintiff's mere disagreement with Dr. Eli's course of action does not establish deliberate indifference on the part of Dr Eli. The record confirms that Dr. Eli responded timely and appropriately to Plaintiff's medical needs. As such, Dr. Eli should be entitled to summary judgment as a matter of law.

## CONCLUSION

Dr. Eli did not ignore a risk of harm to Plaintiff. Rather, the actions taken by Dr. Eli, which included ordering cultures, prescribing antibiotics and pain medication, and referring Plaintiff to the foot doctor for his infected toenail, and by referring Plaintiff to Wishard Hospital for evaluation and care of his broken jaw and then implementing the recommendations of Wishard Hospital physicians, were appropriate for his condition. There is no evidence that any of Dr. Eli's decisions represented "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Instead, the evidence establishes that the care provided

11

by Dr. Eli to Plaintiff was appropriate and within the standard of care.  Therefore, Dr. Eli should be entitled to judgment in his favor and Plaintiff's claims should be dismissed with prejudice.

WHEREFORE, Dr. Eli respectfully requests that this Court grant his Motion for Summary Judgment and for all other just and proper relief.

Respectfully submitted,

/s/Jeb A. Crandall
Jeb A. Crandall, #26323-49
Attorney for Lorenzo Eli, M.D.

Jeb A. Crandall, #26323-49
Bleeke Dillon Crandall, P.C.
8470 Allison Pointe Boulevard, Suite 420
Indianapolis, Indiana 46250-4365
(317) 567-2222
Fax: (317) 567-2220
jeb@bleekedilloncrandall.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    Gerald B. Coleman
    Coleman Stevenson Montel, LLP
    9101 Wesleyan Road
    Suite 100
    Indianapolis, Indiana 46268
    gcoleman@csmlegal.com

I hereby certify that on October 22, 2014, a copy of the foregoing was mailed, by first class mail U.S. Mail, postage prepaid and properly addressed to the following:

    Thomas M. James #98106
    Arizona State Prison
    ASPC-DOUGLAS
    Moshaue North
    P.O. Box 5002
    Douglas, AZ  85608

                                            /s/Jeb A. Crandall