UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS M. JAMES, | ) |
| Plaintiff, | ) Case No. 1:13-cv-541-WTL-TAB |
| vs. | ) |
| LORENZO ELI, et al., | ) |
| Defendants. | ) |

**Entry Discussing Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Thomas James, a former inmate of the New Castle Correctional Facility ("New Castle"), brings this lawsuit alleging that the defendants were deliberately indifferent to his need for treatment for an infected toenail and an injury to the left side of his head and jaw. Defendant Lorenzo Eli, a doctor who treated Mr. James for these injuries, moves for summary judgment. For the reasons that follow, Dr. Eli's motion for summary judgment [dkt 107] is **granted**.

**I. Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l–Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine issue of material fact, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, neither the "mere existence of some alleged factual dispute between

the parties nor the existence of some metaphysical doubt as to the material facts will defeat a motion for summary judgment." *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000) (internal quotes omitted). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price,* 615 F.3d 877, 881 (7th Cir. 2010).

Mr. James has submitted numerous responses to Dr. Eli's motion for summary judgment, but none of his filings, except one (dkt 137-3, pgs. 24-28), is supported by admissible evidence. Federal Rule of Civil Procedure 56 requires factual assertions made at summary judgment to be supported by admissible evidence, not mere allegations. Mr. James has submitted a number of declarations, but only the declaration identified above is sworn to under penalties of perjury. Unsworn or unverified allegations in a complaint or brief that are not made under the penalty of perjury do not qualify as admissible evidence. *See Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (citing 28 U.S.C. § 1746) ("Affidavits are admissible in summary judgment proceedings if they are made under penalties of perjury."); *see also Brown v. Sommers*, 134 F.3d 374, 1998 WL 4737, *1 (7th Cir. 1998) ("The district court's disregard of [the plaintiff-inmate's] statement of facts was likewise not an abuse of discretion[, because the plaintiff-inmate's] failure to sign the statement of facts or swear to its truthfulness under penalty of perjury rendered it inadmissible."). Because Mr. James has failed to provide admissible evidence to support his allegations, his statements are insufficient to create a genuine issue of material fact.

## II. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Mr. James as the

nonmoving party, the following facts are undisputed for purposes of the motion for summary judgment:

### A. *Ingrown Toenail*

On October 21, 2007, while he was incarcerated at New Castle, Mr. James was suffering from an ingrown toenail when his toe was stepped on and it began to bleed. On October 23, 2007, Dr. Eli first saw Mr. James for his complaint of an ingrown toenail. Dr. Eli's concluded that Mr. James's left great toenail was infected.[1] Dr. Eli ordered a culture and sensitivity test, Bactrim DS (antibiotic) twice a day for fifteen days, bacitracin ointment and daily dressing changes, Tylenol, a lay-in pass for ten days (which would allow Mr. James to receive meals in his cell), scheduled him to follow-up in two weeks, and referred him to the facility foot doctor.[2] Mr. James alleges that he did not timely receive his prescription antibiotics and that the Tylenol did not help his pain. He also asserts that no one complied with Dr. Eli's lay-in order. On October 30, 2007, Mr. James returned to medical. Dr. Eli informed Mr. James that he needed to give the antibiotics a chance to work. Dr. Eli also instructed the nurse to provide Mr. James with a protocol box of Ibuprofen, to take one pill three times per day, due to his complaints of pain.

On November 6, 2007, Dr. Eli saw Mr. James for his two-week follow up. Dr. Eli continued his Bactrim prescription for ten days, ordered Naprosyn for pain relief for ten days, and extended his lay-in pass for an additional seven days. Dr. Eli had no further involvement in Mr. James' care for his toenail. On November 20, 2007, Mr. James underwent a toenail removal procedure at the facility from another physician and received instructions on how to care for his foot post-operatively.

---

[1] Mr. James asserts that his toenail was not infected at this time, but supports this statement with no admissible evidence.
[2] Mr. James asserts that he was told that the foot doctor would not come to the prison to treat his foot until there were ten people with foot-related needs and that the time it would take for him to see the specialist was unclear.

B. *Broken Jaw*

Mr. James asserts that he saw Dr. Eli in the hallway on December 27, 2007, and complained to him of his jaw issues. He states that he told Dr. Eli that he slipped and fell, that his jaw was swelling, and that his jaw cracked in his ear while eating and that he requested an x-ray. According to Mr. James, Dr. Eli told him to submit a request for health care.[3] On December 29, 2007, Mr. James was seen by another physician at New Castle due to his complaints of jaw pain. The physician ordered x-rays of Mr. James' mandible (jawbone), prescribed Ibuprofen for pain management, and requested that Mr. James be placed on the list for MD sick call.

Dr. Eli first saw Mr. James for his jaw issues on January 2, 2008. His review of Mr. James' x-rays confirmed a fractured left mandible. In response, Dr. Eli ordered Mr. James transferred to Wishard Hospital for further evaluation and provided him Vicodin for pain management. Mr. James was transferred to Wishard Hospital that day for further evaluation of his jaw. Mr. James reported to Wishard Hospital physicians that he hurt his jaw three weeks previously when he fell on the stairs, that it had gotten better, and then he heard a "pop" about one week ago and was experiencing more pain. Wishard physicians performed a maxillofacial CT scan which confirmed a fractured mandible. Wishard physicians recommended that Mr. James follow-up with a plastic surgeon at Wishard Hospital the following Monday (January 7, 2008).

Dr. Eli next saw Mr. James on the morning of January 3, 2008. Per Wishard Hospital's recommendations, Dr. Eli ordered a soft diet for Mr. James, Vicodin for pain management, Peredox oral rinse, and requested a consultation for Mr. James to return to Wishard Hospital plastic

---

[3] Dr. Eli was one of several physicians at New Castle at the times relevant to Mr. James's complaint. If in inmate wanted to be seen by medical on a non-emergent basis, he would have to submit a Health Care Request. Nursing staff would then gather and triage the requests to determine who should be seen by nursing and who should be scheduled to see the doctor. Dr. Eli would see inmates as they were placed on his schedule by nursing staff. He did not set or arrange the patient schedule.

surgery. Dr. Eli also placed Mr. James in the New Castle infirmary for closer observation and care. On January 7, 2008, Mr. James returned to Wishard Hospital plastic surgery for a consultation. The Wishard Hospital surgeon noted good function of Mr. James' jaw and that surgery was not indicated. Upon Mr. James' return to New Castle, he continued to receive a soft diet, Peredox rinse, and pain medications including at times Vicodin, Naproxen, and Tylenol. On February 13, 2008, Dr. Eli ordered a follow-up consultation for Mr. James with the Wishard Hospital plastic surgery clinic. On February 26, 2008, Dr. Eli evaluated Mr. James due to complaints of left-sided facial pain. Dr. Eli prescribed Naproxen 500 mg and ordered a repeat x-ray, which was completed the following day.

Dr. Eli last saw Mr. James on March 6, 2008, for a chronic care clinic appointment. Dr. Eli ordered labs and a Panorex view x-ray of Mr. James' left jaw to monitor the healing process of his fracture.[4] Mr. James transferred out of New Castle and out of Dr. Eli's care and to Arizona on or about April 15, 2008. Dr. Eli was not responsible for the transfer of inmates from Arizona to New Castle, or for their return to Arizona.

### III. Discussion

Dr. Eli moves for summary judgment arguing that he was not deliberately indifferent to James' serious medical needs. A claim of deliberate indifference "must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition." *Arnett v. Webster,* 658 F.3d 742, 750 (7th Cir. 2011). A medical condition is objectively serious if "a reasonable doctor or patient" would deem the condition "important and

---

[4] Through the course of this litigation, Mr. James has made much of the fact that he has had difficulty obtaining CT scan results and other medical records from Dr. Quinta, a doctor who treated him after his return to Arizona. Mr. James asserts, among other things, "Plaintiff can support the ugly after effects of non-treatment with Dr. Quinta's cat-scans." Even assuming this evidence would show negative consequences from the alleged delay in treatment for Mr. James's jaw, it is not material here because the issue here is whether Dr. Eli himself was deliberately indifferent in causing any delay.

worthy of comment or treatment." *Hayes v. Snyder*, 546 F.3d 516, 523–24 (7th Cir. 2008) (quotation omitted). Deliberate indifference to the serious medical need exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference "is more than negligence and approaches intentional wrongdoing." *Arnett*, 658 F.3d at 751 (citing *Collignon v. Milwaukee Cnty.,* 163 F.3d 982, 988 (7th Cir. 1998)). A plaintiff can show that a medical professional disregarded his serious medical need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that "no minimally competent professional would have so responded under those circumstances." *Arnett*, 658 F.3d at 751.

   A. *Infected Toenail*

Dr. Eli argues that he was not deliberately indifferent to Mr. James's infected toenail. He does not dispute that this was a serious medical need, but argues that because he provided Mr. James with appropriate care, including testing, antibiotics, and pain medication, he was not deliberately indifferent to that need. Mr. James argues that Dr. Eli delayed in treating his infected toenail by failing to remove the nail immediately, that the Tylenol and ibuprofen did not dull his pain, and that he did not receive the antibiotics and lay-in meals ordered by Dr. Eli.

Dr. Eli has shown that he was not deliberately indifferent to Mr. James's infected toenail. Under the Eighth Amendment, Mr. James is not entitled to the best care possible or to demand specific treatment. *Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir.1997). Moreover, a "disagreement with medical professionals [does not] state a cognizable Eighth Amendment Claim under the deliberate indifference standard." *Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir. 2003). The fact

that Mr. James would have preferred to have the toenail removed immediately or that the pain medication Dr. Eli provided did not work as well as he would have liked is insufficient to show that Dr. Eli was deliberately indifferent. Dr. Eli examined Mr. James's toe, ordered tests and medications, referred him to a specialist, and scheduled a follow-up appointment. Further, to the extent that Mr. James asserts that he did not timely receive the prescribed antibiotics or the ordered lay-in meals, he provides no evidence that Dr. Eli was responsible for, or was even aware of, these delays.

Because Dr. Eli has shown that he was not deliberately indifferent to Mr. James's ingrown toenail, he is entitled to summary judgment on this claim.

B. *Broken Jaw*

Dr. Eli next argues that he was not deliberately indifferent to Mr. James's broken jaw. Again, he does not dispute that this was a serious medical need, but argues that because, based upon his initial exam, he immediately referred Mr. James to Wishard Hospital for further evaluation, that he implemented the recommendations from Wishard, placed Mr. James in the infirmary for closer observation, and referred him to a plastic surgeon he was not deliberately indifferent to that need. Mr. James argues that he submitted several requests for healthcare before he was seen on December 27, 2007, and that Dr. Eli was deliberately indifferent to his broken jaw because he saw Dr. Eli "in the hallway near medical" on December 27, 2007, but Dr. Eli did not treat him right away.

Dr. Eli has shown that he was not deliberately indifferent to Mr. James's broken jaw. The first time Dr. Eli examined Mr. James for his broken jaw was December 29, 2007. Upon a review of the x-rays, Dr. Eli immediately referred Mr. James to Wishard Hospital. Dr. Eli then complied with the recommendations of the physicians at Wishard after Mr. James returned to New Castle.

Mr. James asserts that he submitted several healthcare requests before he was seen by Dr. Eli. While it is true that a delay in medical care may amount to deliberate indifference, *see McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."), Mr. James does not show that Dr. Eli was aware of these requests or that Dr. Eli contributed in any delay in scheduling Mr. James for an appointment. It remains undisputed that Dr. Eli was not involved in the scheduling of patients. To the extent that Mr. James asserts that he spoke to Dr. Eli on December 27, 2007, he states that he told Dr. Eli that he had fallen and hurt his jaw weeks before, that he heard a crack while eating, and that his jaw was swelling again. Consistent with the fact that he cannot schedule patients, Dr. Eli told Mr. James that he should submit a request for health care. This is not sufficient to show deliberate indifference on the part of Dr. Eli. First, as discussed above, Mr. James does not support these allegations with admissible evidence. Next, Mr. James was seen by a physician just two days after this conversation with Dr. Eli. In addition, Mr. James alleges that Dr. Eli informed him of the correct procedure for requesting health care. Finally, Mr. James's remarks to Dr. Eli – that he had hurt his jaw before, that it had cracked, and that it was swelling – do not necessarily imply the need for immediate medical care. Mr. James's disagreement with Dr. Eli is not sufficient to show deliberate indifference. *See Ciarpaglini v. Saini,* 352 F.3d at 331. Dr. Eli has shown that he provided Mr. James with timely and appropriate care for his broken jaw and was therefore not deliberately indifferent to this medical condition.

### IV. Conclusion

For the foregoing reasons, Dr. Eli's motion for summary judgment [dkt 107] is **granted.** Judgment consistent with this Entry and the Entry of September 18, 2014 (dkt 101) granting Dr. Villanustre's motion for summary judgment shall now issue.

**IT IS SO ORDERED.**

Date: 8/11/15

Distribution:

Thomas M. James, 98106
Arizona State Prison
ASPC-Douglas
Moshaue North
P.O. Box 5002
Douglas, AZ 85608

All electronically registered counsel

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana